UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ESTATE OF JEREMI ATKINSON, by and through its Personal Representative, Toni Atkinson, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:12-cv-00958-TWP-DKL ) |
| THE KROGER COMPANY, | ) ) |
| Defendant. | ) |

## ENTRY ON SUMMARY JUDGMENT

This matter is before the Court on The Kroger Company's ("Kroger") Motion for Summary Judgment (Dkt. 47). Decedent, Jeremi Atkinson ("Mr. Atkinson") was shot and killed as he purportedly attempted to rob a Kroger store in Indianapolis, Indiana. Plaintiff, the Estate of Jeremi Atkinson ("the Estate") brought this diversity action for wrongful death under Indiana law alleging that Kroger was wanton and willful and/or grossly negligent by failing to enforce its no gun policy. For the following reasons, Kroger's Motion is **GRANTED**.

## I. BACKGROUND

The following facts are undisputed and considered in the light most favorable to the Estate. On December 26, 2011, Jeremi Atkinson entered the Kroger store located at 5025 West 71st Street, Indianapolis, Indiana through a door and into an enclosed corridor which contained a stairway leading up to the managers office. This area was separated from the sales floor where Kroger employees shopped. Mr. Atkinson was wearing a hooded sweatshirt and black mask over his face. Mr. Atkinson was unarmed. Upon entering the employee only restricted area; Mr. Atkinson encountered Christine Nelson ("Ms. Nelson"), a Securitas security guard, and put her

in a headlock. While in this area, Mr. Atkinson, still holding Ms. Nelson in a headlock, encountered Penny McReynolds ("Ms. McReynolds"), who had just descended the stairs. While still holding Ms. Nelson in a headlock, Mr. Atkinson grabbed Ms. McReynolds by the throat and shoved her against the corridor wall. Elijah Elliott ("Mr. Elliott"), a co-manager of the Kroger store, was in the area at the top of the stairs. He heard a scuffle and when he investigated, he observed Mr. Atkinson holding Ms. Nelson in a headlock and pinning Ms. Reynolds to the wall. Mr. Atkinson then released the women—who ran away—and charged up the stairs toward Mr. Elliott. When Mr. Atkinson was three to six steps away from Mr. Elliott, Mr. Elliott removed a concealed handgun from his pocket and shot three times at Mr. Atkinson. Mr. Atkinson died from the gunshots wounds.

The Kroger employee handbook and policy prohibits employees from carrying or bringing firearms to work. Throughout the course of his employment with Kroger, Mr. Elliott was aware of the policy to refrain from having weapons on the premises, but had voiced his objection to that policy multiple times. Mr. Elliott was in knowing violation of the policy when he shot and killed Mr. Atkinson. No other Kroger employees knew Mr. Elliott was carrying a concealed weapon. Two weeks prior to the December 26, 2011 shooting, Mr. Elliott had again expressed his displeasure with the policy. Additionally, off-duty police officers who worked as Kroger security employees did carry weapons while working at Kroger. Additional facts will be discussed below, as necessary.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

The Estate's claim is grounded in premises liability and the duty of care owed to a person entering the land of another. "Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide." *Mohr v. Virginia B. Smith Revocable Trust*, 2 N.E.3d 50, 54 (Ind. Ct. App. 2014). Determining the applicable duty to the claim requires defining the status of a person entering upon the land of another. In Indiana, a person entering upon the land of another can be defined as an invitee, a licensee, or a trespasser, and "a person's status on the land is generally a matter left for determination by the trial court, not the jury." *Id.* "Licensees and trespassers are defined as those who enter the land of another for their own convenience,

curiosity, or entertainment and take the premises as they find them." *Burrell v. Meads*, 569 N.E.2d 637, 640 (Ind. 1991). Individuals entitled to invitee status include the public invitee, the business visitor, and the social guest. *Id.*

The Estate does not meaningfully challenge Kroger's position that Mr. Atkinson was a trespasser, and regardless, the Court finds the undisputed facts establish that at the time of the shooting, Mr. Atkinson was a trespasser under Indiana law. Unlike a licensee, which has a privilege to remain on the land by virtue of permission or sufferance, *Mohr*, 2 N.E.2d at 55, a trespasser does not have permission and enters for his own purposes. It is undisputed that Mr. Atkinson entered the Kroger store and the restricted area for his own "convenience, curiosity, or entertainment". His actions in entering a restricted area of the store, physically confronting two female store employees and his masked attire establish that he was not at the store as a shopper, but indicate he intended to engage in criminal activity. Thus, the duty of care owed to a trespasser applies in this action.

"[A] landowner owes a trespasser the duty to refrain from willfully or wantonly (intentionally) injuring him after discovering his presence." *Burrell*, 569 N.E.2d at 639.

> Wanton and willful conduct consists of either: (1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or (2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and has opportunity to avoid that risk.

*Taylor v. Duke*, 713 N.E.2d 877, 882 (Ind. Ct. App. 1999). Put another way, "[w]illful or wanton misconduct is so grossly deviant from everyday standards that the licensee or trespasser cannot be expected to anticipate it." *Id.* (internal quotation marks omitted). The Estate argues that this definition also encompasses gross negligence. *See N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003). In *Sharp*, the Indiana Supreme Court decided a negligence case

4

dealing with the duty of an electric company to the general public. In that case, the standard was gross negligence, defined as "'[a] conscious, voluntary act or omission in reckless disregard of . . . the consequences to another party.' Black's Law Dictionary 1057 (7th ed. 1999)." *Id.* The definition of "wanton and willful conduct" described in *Taylor*, is similar, but requires an intentional act. Importantly, this Court could find no Indiana premises liability case that uses the label "gross negligence." For the aforementioned reasons, the Court finds that the Estate's use of this standard is incorrect and does not factor into the Court's analysis under well-settled Indiana law.

The Estate's Complaint (Dkt. 1) alleges that Kroger failed to supervise its employees, enforce its safety policies, and as a result, breached its duty of care. It also alleges that Kroger willfully and wantonly harmed Mr. Atkinson. Dkt. 1 at 3 ¶ 16. For its part, Kroger contends there is no evidence it intentionally caused harm to Mr. Atkinson, that Mr. Atkinson's fault exceeds 50% of the total fault as a matter of law, and public policy precludes the recovery of damages which result from knowing and intentional participation in a criminal act.

The Estate presents several theories to support its claim. Each theory relies upon the existence of Kroger's gun policy and Mr. Elliott's violation of the same. Kroger argues that the internal no-gun policy is irrelevant to the question of duty, as it was under no legal obligation to institute or enforce the policy. Rather, Kroger argues, it is only bound by the common law. This line of argument implicates the idea of assumption of duty. Under Indiana law, "[a] duty of care may . . . arise where one party assumes such a duty, either gratuitously or voluntary. The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Yost v. Wabash Coll.*, 3 N.E.3d 509,

517 (Ind. 2014) (quotation marks omitted) (alteration in original). Indiana uses the Restatement (Third) of Torts: Physical and Emotional Harm § 42 (2012), to define the theory, which states:

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
>
> (a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
>
> (b) the person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

*See Yost*, 3 N.E.2d at 517. However, this doctrine does not apply to the matter at hand, as one critical factor is missing: there is no evidence that Mr. Atkinson relied upon Kroger's assumption of a duty of care in the form of the no-gun policy. In other words, the Court finds that Kroger did not assume a specific duty to Mr. Atkinson to prevent the harm that occurred in this case by adopting a no-gun policy. Therefore, the Court finds that Kroger's lack of enforcement and Mr. Elliott's breach of the policy are irrelevant to the negligence claim before the Court. The Court rejects the Estate's arguments that Kroger failed to inform its employees of the policy, did not enforce its policy as applied to off-duty police officers, and failed to reinforce the policy to Mr. Elliott two weeks before the incident. Rather, the operative determination is whether Kroger can be said to have willfully and wantonly caused harm to Mr. Atkinson.

The Estate briefly argues that Mr. Elliott's intentional actions can be imputed to Kroger because he is a manager. As Kroger argues in its Reply, this is a new legal theory not raised in the Complaint. The Court agrees and finds this theory waived. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009) (finding that district court did not err by concluding that alternative basis for claims was waived "by raising it for the first time in its sur-reply during summary judgment proceedings"); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir.

6

2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment" (quotation omitted)). Even so, if the Complaint had contained an allegation that would support this theory, the Estate has failed to support the theory with record evidence. *See Trade Fin. Partners, LLC*, 53 F.3d at 412 ("Even if the reference to AAR Allen's action would have survived a motion to dismiss, Trade Finance was required to present more than a mere allegation to survive summary judgment—it must point to evidence creating a genuine issue of material fact.").

Further, as noted by Kroger, there is no evidence that Mr. Elliott was acting on behalf of Kroger when he carried a concealed gun and shot Mr. Atkinson. Mr. Elliott was not under a duty or obligation to protect the store against robbery attempts and, in fact, had been trained to avoid confrontation. *See* Dkt. 56-3 at 1, 16: 10–22. Here, the inquiry is whether Mr. Elliott was acting within the scope of his employment when he shot Mr. Atkinson. To be within the scope of employment, "the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008). "Acts done on the employee's own initiative, with no intention to perform it as part of or incident to the service for which he is employed are not in the service of the employer and are thus outside the scope of employment." *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997) (internal quotation marks omitted). The facts presented show that Mr. Elliott's actions were not authorized by Kroger and could not be considered to further Kroger's business. Mr. Elliott secretly carried a concealed gun without Kroger's consent, and testified that he used the gun in self-defense for his own protection. Simply put, there is no record evidence that Kroger willfully and wantonly caused harm to Mr. Atkinson. Kroger did not breach its duty to Mr. Atkinson when Mr. Elliott shot and killed Mr. Atkinson.

As for the remaining contentions, the Court declines to apportion fault to Mr. Atkinson, as summary judgment can be adjudicated without reaching Kroger's alternative argument. Further, the Court, while not making an express finding, is persuaded by Kroger's public policy argument that would preclude recovery for the Estate based on Mr. Atkinson's criminal conduct. Kroger's Motion for Summary Judgment is **GRANTED**.

## IV. <u>CONCLUSION</u>

Accordingly, Kroger's Motion for Summary Judgment (Dkt. 47) is **GRANTED**. The Estate's claim is **DISMISSED with prejudice**.

**SO ORDERED.**

Date: 05/21/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey S. Zipes
COOTS HENKE & WHEELER
jzipes@chwlaw.com

Jon C. Abernathy
GOODIN ABERNATHY LLP
jabernathy@goodinabernathy.com